IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| FRANKIE D. ALBERT, AS PARENTS AND NEXT FRIEND OF JANE DOE, A MINOR; AND PHYLIS ALBERT, AS PARENTS AND NEXT FRIEND OF JANE DOE, A MINOR; | § § § § § § | SA-17-CV-00703-JKP |
| *Plaintiffs,* | § § | |
| vs. | § § | |
| UNITED STATES DEPARTMENT OF THE ARMY, WOUNDED WARRIOR PROJECT, INC., | § § § § | |
| *Defendants.* | § | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Jason K. Pulliam:**

This Report and Recommendation concerns Plaintiffs' Reurged Motion for Leave to File Third Amended Complaint with Evidence in Support [#57] and Defendant Wounded Warrior Project, Inc.'s Motion for Summary Judgment [#73]. Also before the Court are the following responses and replies to the motions: United States' Opposition to Motion for Leave to File Third Amended Complaint [#67]; Plaintiffs' Reply to Defendant United States' Opposition to Plaintiffs' Reurged Motion for Leave to File Third Amended Complaint [#69]; Plaintiffs' Response to Defendant Wounded Warrior Project, Inc.'s Motion for Summary Judgment [#74]; Defendant Wounded Warrior Project, Inc.'s Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment [#75]. Plaintiffs have also moved to file a Sur-Reply to Defendant Wounded Warrior Project, Inc.'s response [#76]. The undersigned will grant the motion and has considered the sur-reply in making its recommendation to the District Court.

1

All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#58]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Plaintiffs' motion for leave to amend [#57] be **dismissed without prejudice** to being renewed at trial on a full evidentiary record and the motion for summary judgment [#73] filed by Defendant Wounded Warrior, Inc. be **denied**.

## I. Background

This case arises out of personal injuries sustained by Shyanna Albert on November 9, 2013, when she was 13 years old. According to the Second Amended Complaint before the Court, Shyanna was injured while riding in a U.S. Army vehicle during a Veteran's Day Parade sponsored by the Wounded Warrior Project, Inc. ("WWP") when a steel bar fell on her head and knocked her unconscious. (Second Am. Compl. [#54] at ¶¶ 5–7.) Shyanna's parents, Frankie and Phylis, filed this action as parents and next friends of Shyanna, then a minor, against Defendants United States Department of the Army ("U.S. Army") and WWP, alleging that their negligence caused Shyanna's injuries. (*Id.* at ¶¶ 8–12.)

Plaintiffs allege that Defendants worked together in providing the truck as a parade vehicle and were negligent in inviting Shyanna and her family to ride in the parade in an Army truck with an unsecured heavy bar above the heads of the passengers. (*Id.* at ¶¶ 6–8.) According to Plaintiffs, the steel bar at issue was a part of a frame intended to support a canvas-type cover for the sides and top of the truck bed. (*Id.* at ¶ 6.) The canvas cover had been removed for the parade; the frame could have been removed but was not. (*Id.*) The force of the impact of the falling bar allegedly caused Shyanna to sustain severe and permanent head injuries. (*Id.* at ¶ 5.)

Plaintiffs' claim against the U.S. Army arises under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* (*Id.* at ¶ 1.) On June 12, 2015, Plaintiffs filed an administrative claim against the U.S. Army seeking $40,000 in damages. (Second Am. Compl. [#54] at ¶ 13; Admin. Cl. [#41-1].) Two years later, Plaintiffs filed their Original Complaint, alleging that Shyanna's injuries were much more severe than originally known. (Orig. Compl. [#1] at ¶ 13.) After Plaintiffs filed a First Amended Complaint as a matter of right, Plaintiffs moved for leave to file a Second Amended Complaint to increase Shaynna's damages as to the FTCA claim from $40,000 to $3.75 million, among other amendments. (Mtn. for Leave [#39].) The District Court granted the motion for leave as to various unopposed amendments, which included the addition of Shyanna as a Plaintiff because she had reached the age of majority. (Order [#51].) The District Court denied the motion for leave as to the increased damages, but the denial was without prejudice to refiling the motion with evidence to support the amendment. (*Id.*)

Plaintiffs filed their Second Amended Complaint and renewed motion for leave to amend their pleadings on the same day. WWP subsequently moved for summary judgment on Plaintiffs' claim of negligence. The motions are ripe for the Court's review.

## II. Motion for Leave to Amend

Plaintiffs' Reurged Motion for Leave to File Third Amended Complaint [#57] again asks the Court for leave to file an amended pleading that increases the damages requested in this case from the $40,000 contained in the FTCA administrative claim to $3.75 million.

The FTCA prohibits the filing of any civil action "in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim."

3

28 U.S.C. § 2675(b). Accordingly, to obtain leave to amend their pleadings, Plaintiffs must meet two standards. They must satisfy Rule 15 of the Federal Rule of Civil Procedure, which governs the amendment of pleadings, and they must fit their case within the exception to the FTCA's prohibition set forth in Section 2675(b). Because the statutory standard is more stringent than Rule 15, the Court first considers this standard.

The Fifth Circuit has adopted the worst-case prognosis test in evaluating whether a plaintiff's claim of increased damages falls within the statutory exception to the FTCA's damages cap. *See Low v. United States*, 795 F.2d 466 (5th Cir. 1986) (reversing judgment in part and reducing damage award from $3.5 million to the $1.275 requested in plaintiff's administrative claim). "Requiring the plaintiff to guard against a worst-case scenario in preparing his claim gives the Government full notice of its maximum potential liability in the case." *Lebron v. United States*, 279 F.3d 321, 330 (5th Cir. 2002).

According to *Low*, the question of whether damages can be increased under Section 2675(b) presents a twofold issue. 795 F.2d at 470. A court must first subjectively evaluate "whether the specific injuries were known at the time the administrative complaint was made." *Dickerson ex re. Dickerson v. United States*, 280 F.3d 470, 476 (5th Cir. 2002). The court then must objectively evaluate "whether the plaintiff could have made out its worst-case scenario based on the basic severity of the injuries that were known" at that time. *Id.* "[N]ew information cannot surmount the bar created by § 2675(b) if the information merely concerns the precision with which the nature, extent, or duration of a claimant's condition can be known." *Lebron*, 279 F.3d at 330. There is extensive case law interpreting these binding precedents, which was surveyed in the District Court's extensive 50-page order denying without prejudice Plaintiffs' original motion for leave to amend [#51].

As previously stated, the basis for the District Court denial of Plaintiff's original motion was a lack of evidence to support the requested amendment. Attached to Plaintiffs' reurged motion are hundreds of pages of affidavits, school and medical records, and other evidence, by which Plaintiffs seek to convince the Court that the severity of Shyanna's brain injury could not have been known at the time of the filing of their administrative claim in 2014. Plaintiffs contend that their evidence demonstrates that Shyanna's school performance and attendance declined significantly after June 2015 when the FTCA administrative claim was filed due to the unexpected worsening of her medical condition. Plaintiffs further argue that the state of science on traumatic brain injuries made Shyanna's future problems associated with her injuries unforeseeable in June 2015 when she filed her administrative claim. The U.S. Army opposes the motion, arguing that all of Shyanna's injuries were present, known, and documented when she filed her administrative claim and urging the Court to deny the amendment.

The two-prong evaluation of Shyanna's known injuries and her worst-case prognosis at the time of the administrative complaint is necessarily a fact-sensitive inquiry. For this reason, some courts have concluded that a motion for leave to amend to increase FTCA damages is most appropriately considered at trial upon the development of a full evidentiary record and the presentation of live testimony, particularly where the resolution of the motion hinges on disputed facts, as here. *See, e.g.*, *Troilo v. Michner*, No. CV 13-2012 (RMB/AMD), 2015 WL 12839014, at \*5 (D.N.J. Nov. 17, 2015); *Zurba v. United States*, 247 F. Supp. 2d 951, 957 (N.D. Ill. 2001); *Michels v. United States*, 815 F. Supp. 1244, 1247 (S.D. Iowa 1993). Based on the record in this case, this also appears to be the intent of the District Court, which explained—in permitting Plaintiffs to file their renewed motion for leave—that "[w]hether or not the exceptions will apply is reserved for resolution through summary judgment or bench trial at a later date if the

government continues its opposition" to Plaintiffs' amendment. (Order [#53] at 2.) The undersigned agrees with the District Court that Plaintiffs' motion should be raised at trial after all of the evidence of Shyanna's injuries has been presented to the factfinder, particularly in light of the fact that this case will be tried as a bench trial.

Plaintiffs' evidence indeed demonstrates a worsening of Shyanna's symptoms since 2015. At the time Shyanna filed her administrative claim in 2015, she had been diagnosed with a mild neurocognitive disorder due to changes in her concentration and attention, memory deficits, issues with word retrieval, episodes of disorientation, increased fatigue, and difficulty in school. (Med. Records [#57-4] at 44–46.) After she filed her claim, beginning in 2016, Shyanna began experiencing nonepileptic seizures involving involuntary body movement, spasms, and memory loss. (Med. Records [#57-3] at 69, 79.) Because the seizures could not be attributed to any specific neurological activity, she was diagnosed with a conversion disorder, meaning the seizures were related to psychological not physical issues. (*Id.* at 69, 79–80, 146.) By 2017, Shyanna had developed severe anxiety and depression, fatigue and sleeplessness, nightmares, social challenges, the inability to participate in previous activities such as sports, academic issues, and had failed the twelfth grade. (*Id.* at 143.)

Several factors present in this case complicate the evaluation of whether the extent of Shyanna's injuries were known at the time of the filing of her administrative claim and make Plaintiffs' request for amendment ill-suited for a preliminary ruling. First, Shyanna's claimed injuries are neurocognitive and psychological, as opposed to physical, in nature. Her medical records indicate that she has never had an abnormal neurological exam, CT scan, MRI, or EEG of the brain. (*Id.* at 65, 91.) Yet in the intervening years since her brain injury, the records also demonstrate that she has suffered from an array of emotional, psychological, and neurocognitive

issues. The injuries are therefore to a certain extent invisible and amorphous, making them more difficult to diagnose and to separate from other possible contributing causes, and making this case readily distinguishable from many cases in which the extent of neurological damage is much more defined and identifiable from the moment of injury. *Cf., e.g.*, *Low*, 795 F.2d at 468 (infant diagnosed immediately post-birth with depressed skull fracture, cerebral palsy, seizure disorder, blindness, deafness, and mental retardation); *Dickerson*, 280 F.3d at 473–74 (majority of infant's brain tissue destroyed from traumatic birth, resulting in identified high risk for spastic quadriplegia, cerebral palsy, seizures, visual impairment, and mental retardation).

Additionally, the head injury underlying this suit was not the first or last head injury sustained by Shyanna during the relevant time period. The medical records attached to Plaintiffs' motion establish that Shyanna sustained her first concussion one week prior to the Veteran's Day parade while playing basketball when she hit her head on the floorboard of the gym and briefly lost consciousness. (Med. Records [#57-3] at 62.) Approximately six months after Shyanna filed her administrative claim, in January 2016, she sustained a third injury when she fell while riding a skateboard and injured her right knee and hip. (Med. Records [#41-3] at 1–2.) Although a concussion was not confirmed, Shyanna's medical records indicate that "she fell forward onto outstretched hands, hit her head on the pavement and scraped her knee." (*Id.*) In August 2017, Shyanna fell off her skateboard again, and this time was diagnosed in the emergency room with a "non-displaced right clavicle shaft fracture and concussion." (*Id.* at 6–7.) The factfinder will have to rely on the testimony of various fact and expert witnesses to make an ultimate determination as to what part of Shyanna's claimed injuries, if any, were caused by the 2013 incident at the Veteran's Day parade. Because a fact issue remains as to causation, the Court is unable to conclusively determine at this time whether the extent of Shyanna's symptoms

fall within the worst-case prognosis of her head injury at the time of the filing of her administrative claim.

Finally, the conflicting opinions of the parties' designated expert witnesses demonstrate that a wide range of theories exist as to the potential impact of concussive injuries, especially repeated injuries like those sustained by Shyanna. Plaintiffs' designated experts, treating neuropsychologist Dr. Robert Lowry and examining neuropsychologist Dr. Sean Connolly, both believe that Shyanna suffered a significant "second-impact" injury to the brain in 2013 when the metal rod knocked her unconscious at the parade and that this subsequent injury is the primary cause of her lasting neuropsychological issues. (Lowry Report [#57-4] at 23, 26, 29; Connolly Report [#57-4] at 46, 60–62.) The U.S. Army's designated expert, neuropsychologist Dr. Kyle Boone, opines that Shyanna "would have no cognitive or psychiatric residuals form the head injuries/equivocal concussions in November of 2013" and that she is suffering from a somatoform disorder or has been deliberately feigning symptoms. (Boone Expert Report [#57-5] at 19.) The factfinder will be tasked with reconciling these opposing viewpoints at trial, and the resolution thereof will necessarily inform the evaluation of whether Plaintiffs should have known of the extent of Shyanna's injuries based on the 2015 diagnosis of a mild neurocognitive disorder due to the two head injuries she had sustained at that time.

The undersigned notes that in its response to Plaintiffs' motion the United States requests an evidentiary hearing to resolve the motion and has asked for the right to designate an additional expert with a supplemental opinion no less than 14 days before the hearing. As previously stated, the undersigned will not hold a hearing on Plaintiffs' motion but rather will recommend that the District Court resolve Plaintiffs' motion in the context of the bench trial in this case. To require the parties to separately litigate this issue in a full evidentiary hearing would be a waste

of this Court's resources given that the evidence underlying Plaintiff's motion supporting her argument to amend is the very same evidence that Plaintiffs will present at trial to prove causation and damages. If the United States still believes it is entitled to a supplemental expert at trial, it should file a separate motion requesting the same and explaining why it did not designate the expert within the deadlines imposed by the Court's scheduling order. Nothing prevents Dr. Boone, the Government's current designated expert, from issuing a supplemental report in response to the opinions of Drs. Lowry and Connolly.

### III. Motion for Summary Judgment

By its motion for summary judgment, Defendant Wounded Warrior Project ("WWP") asks the Court to grant it summary judgment on Plaintiffs' claims of negligence because there is no evidence in the record that WWP proximately caused Plaintiffs' injuries. Because a fact issue remains on causation, the Court should deny the motion.

**A.     Legal Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at

323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

**B.    Summary Judgment Record**

The summary judgment record contains evidence of the following facts, which are undisputed unless otherwise noted. WWP is a nonprofit corporation organized under the laws of Virginia and registered in Texas to provide programs and services to wounded service members and veterans. (Corporate Docs. [#73-1] at 1–7.) In 2013, WWP applied to participate in San Antonio's Veterans' Day Parade. (Arredondo Dep. [#73-3] at 15:13–16:3.) The application described the participation of a "Trailer with Wound Warriors" with individuals both riding in and walking alongside the vehicle. (*Id.*) Juan Arredondo, Outreach Specialist for WWP, coordinated the use of a light-weight tactical U.S. Army vehicle for the parade. (*Id.* at 23:2–20.) Mr. Arredondo's ex-wife Lieutenant Arredondo, a commander in the U.S. Army Reserves, arranged for the signing, borrowing, and dispatch of the vehicle from the U.S. Army. (Orozco Dep. [#73-3] at 41:4–9.) Sergeant Orozco, who was at the time was a member of the U.S. Army Reserves, and two other soldiers were paid to drive the truck from Fort Sam Houston to downtown San Antonio for use in the parade and to operate the vehicle at the parade.

(Arredondo Dep. [#73-3] at 28:10–29:1; Orozco Dep. [#73-4] at 13:21–25, 16:5–18.) The soldiers were under the command of Lieutenant Arredondo on the day of the parade. (Arredondo Dep. [#75-2] at 26:14–16.) Sergeant Orozco was told that a number of Wounded Warriors and their families would be walking in front of or behind the truck throughout the parade. (Orozco Dep. [#73-4] at 12:5–14.) Mr. Arredondo and Mr. Horton were the two representatives of WWP present on the day of the event when the soldiers and truck arrived. (Arredondo Dep. [#73-3] at 28:4–9.)

According to Sergeant Orozco, when he arrived with the truck, Mr. Arredondo changed the plan and informed him that the Wounded Warriors and their families would ride in the back of the truck instead of walking alongside it in the parade. (Orozco Dep. [#73-4] at 17:14–25, 18:12–17.) Sergeant Orozco maintains that he objected to the new plan due to the height and age of the vehicle, the lack of seatbelts, and the potential for injury, but Mr. Arredondo loaded the families into the truck over his objection. (*Id.* at 17:18–25, 19:1–20.) Shyanna and her family were among the participants loaded into the truck.

According to Mr. Arredondo, he asked Sergeant Orozco and the soldiers to remove the canvas cover on the vehicle due to the heat that day and to improve visibility for those riding on the float during the parade and parade spectators. (Arredondo Dep. [#73-3] at 29:2–25; Orozco Dep. [#73-4] at 20:4–9.) Sergeant Orozco testified in his deposition that he also verbally objected to this plan because without the tarp, the frame would be loose and unstable, but Mr. Arredondo chose to remove the cover anyway. (Orozco Dep. [#73-4] at 20:10–22.) There is a dispute regarding who actually removed the cover. Mr. Arredondo claims that neither Mr. Arredondo nor Mr. Horton assisted with the removal of the cover. (Arredondo Dep. [#73-3] at

11

29:19–25.) Sergeant Orozco claims that he did not remove the cover either, and it was members of WWP who did so. (Orozco Dep. [#73-4] at 22:1–13, 59:19–22.)

After the cover was removed, the metal frame holding the cover was exposed on the top of the vehicle. According to Mr. Arredondo, he asked Sergeant Orozco if he intended to remove the bars, and Orozco told him, "No. It will give the warriors something to hold onto." (Arredondo Dep. [#73-3] at 31:5–10.) Sergeant Orozco in contrast testified that he was concerned about the safety of leaving the frame on the vehicle, as it typically would be removed with the cover, and warned the participants to "be careful because [it] is a flimsy frame." (Orozco Dep. [#73-4] at 66:3–5.) It is undisputed, however, that neither Mr. Arredondo nor Sergeant Orozco directed anyone to remove the metal frame bars beneath the canvas. (Arredondo Dep. [#73-3] at 30:25–31:4; Orozco Dep. [#73-4] at 65:20–25.) According to Sergeant Orozco, it would have been futile to do so anyway because Mr. Arredondo was not listening to him anymore at this point. (Orozco Dep. [#73-4] at 65:17–22.) Sergeant Orozco described Mr. Arredondo as "delegating everything" and "leading everything" regarding the Wounded Warrior float throughout the event. (*Id.* at 33:13–16.) Shyanna also characterized the chain of command on the day of the event this way, stating that Arredondo and Horton were "directing National Guard or Army personnel" and that they told Army employees where to place the vehicle before the parade started and provided other directions to them and the passengers. (Shyanna Interog. Resps. [#73-5] at 5, 8.)

Shortly thereafter, the accident occurred, though it is unclear what actually caused the bar to come loose, fall, and hit Shaynna in the head. According to Shyanna, the WWP representatives told the soldiers to move the truck; when it moved, it began vibrating, and one of the bars of the metal frame became loose, fell, and hit Shyanna in the head, knocking her

12

unconscious. (Orozco Dep. [#73-4] at 24:3–11, 24:22–25:11; F. Albert Dep. [#74-4] at 40:5–23; Shyanna Interrog. Resps. [#73-5] at 5.) Sergeant Orozco posited that it could have been the closing and rattling of the doors of the vehicle by the soldiers that caused the bar to fall off. (Orozco Dep. [#73-4] at 34:5–9.)

Mr. Arredondo and Horton were not present at the precise time the bar fell onto Shyanna's head because they were helping other Wounded Warriors find their way to the parade. (Arredondo Dep. [#73-3] at 35:15–22, 37:21–38:2.) In response to the accident, Sergeant Orozco jumped off the vehicle, directed someone to call EMS, and waited with Shyanna for the emergency responders. (Orozco Dep. [#73-4] at 24:8–12.) Once EMS arrived, the entire frame was removed from the truck, and the parade continued. (*Id.* at 24:12–16, 26:7–13.) Sergeant Orozco testified that the WWP representatives told him they were going to take care of everything with respect to the accident from there. (*Id.* at 69:7–10.) Mr. Arredondo prepared an incident report regarding the accident on April 2, 2014, approximately six months later, to submit to WWP's primary office and its legal team. (Arredondo Dep. [#73-3] at 39:12–40:4, 42:6–14.) Neither Lt. Arredondo or Sergeant Orozco took any further action. (Orozco Dep. [#73-4] at 69:7–10.)

**C.    Analysis**

WWP contends it is entitled to summary judgment on Plaintiffs' claim of negligence because there is no evidence that the acts of WWP caused Shyanna's injuries. To prevail on their negligence claims against WWP, Plaintiffs must prove the following: (1) WWP had a duty to Shyanna; (2) WWP breached that duty;[1] and (3) this breach proximately caused Shyanna's

---

[1] Although WWP also argues in its motion that there is no evidence that WWP owed Shyanna a duty of reasonable care and engaged in any acts breaching that duty, these arguments are not developed separate and apart from WWP's challenge of proximate causation, which is

13

injuries. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Plaintiffs allege that WWP was negligent in failing to secure the metal bar; failing to remove the metal frame at the time of the removal of the canvas cover; and failing to protect Shyanna against an unreasonable risk of harm. (Shyanna Interog. Resps. [#73-5].) WWP argues that because Plaintiffs' evidence does not prove exactly what caused the bar to fall, there is no genuine issue of material fact as to causation. Because the U.S. Army owned, operated, and staged the vehicle, as well as its frame and canvas, WWP maintains it should be awarded summary judgment and absolved of any possible liability for Shyanna's injuries at this stage in the proceedings. The undersigned disagrees.

Proximate cause consists of foreseeability and cause in fact. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). Foreseeability inquires whether a person of ordinary intelligence would have anticipated the danger his act created. *See S.W. Key Program, Inc. v. Gil-Perez*, 81 S.W.3d 269, 274 (Tex. 2002). As acknowledged by WWP in its motion, "cause in fact" is "established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *IHS Cedars Treatment Ctr. of DeSoto, Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004). Under Texas law, there may be more than one proximate cause of an event or injury. *In re Air Crash at Dallas/Fort Worth Airport on Aug. 2, 1985*, 919 F.2d 1079, 1086–87 (5th Cir. 1991).

The summary judgment evidence, viewed in the light most favorable to Plaintiffs establishes that WWP requested the use of the U.S. Army vehicle for its float in the San Antonio

---

the primary basis of WWP's motion. In any event, "[u]nder the common law, one person owes another the duty to act as a reasonably prudent person would act under the same or similar circumstances regarding any reasonably foreseeable risk." *Kelly v. Brown*, 260 S.W.3d 212, 218 (Tex. App.—Dallas 2008, no pet.) (citing *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex. 1984)). Accordingly, WWP owed a duty of reasonable care to the families it invited to participate in the Veterans' Day Parade.

Veterans' Day Parade; Mr. Arredondo, in representing WWP, directed the participants, U.S. Army soldiers, and the vehicle on the morning of the parade; Mr. Arredondo changed the plan at the last minute and ordered Wounded Warriors and their families, including children, to ride on top of the vehicle over the protestations of Sergeant Orozco; Mr. Arredondo directed the removal of the canvas cover from the vehicle's frame and physically removed the cover himself over the warnings of Sergeant Orozco; and immediately thereafter the frame loosened and a bar fell on Shyanna's head, knocking her unconscious. (Arredondo Dep. [#73-3] at 23:2–20, 29:2–25; Orozco Dep. [#73-4] at 17:14–25, 18:12–17, 19:1–20, 20:4–22, 22:1–13, 33:13–16, 59:19–22, 66:3–5; Shyanna Interog. Resps. [#73-5] at 5, 8.) WWP attempts to argue that these acts of WWP do not raise a fact issue as to the proximate cause of Shyanna's injury because they are too attenuated from the injury. The undersigned disagrees.

The Texas cases cited by WWP illustrating speculative causation involved injuries far more attenuated from the acts of the defendants than the closely linked acts of WWP and Shyanna's injury. For example, *Marthon Corp. v. Pitzner*, one of the cases cited by WWP in its reply brief, involved allegations of premises defects as a cause for the injuries sustained by an air conditioning repairman who fell from the roof of a building occupied by the defendant that was not compliant with Dallas city building and mechanical codes. 106 S.W.3d 724, 725–26 (Tex. 2003). The Texas Supreme Court reversed the court of appeals' judgment affirming a jury verdict in the repairman's favor due to legally insufficient evidence to support a finding of proximate causation. *Id.* at 726. The repairman's expert posited that the repairman sustained an electrical shock because the air conditioning units had been shut off inside the building and therefore the repairman "reached into the access panel, came into contact with a high-voltage wire, was shocked, stumbled back, and fell off of the building." *Id.* at 729. Yet there was no

proof or corroboration of the first premise introduced at trial—that the units had been shut off inside the building. *Id.* Under these circumstances, all of the expert's opinions were based on speculation and only slight circumstantial evidence, which on its own was insufficient evidence of causation. *Id.*

The factfinder is not asked to engage in this degree of speculation here, where the evidence (resolved in Plaintiffs' favor) establishes that certain acts were taken by Arredondo on behalf of WWP; that these acts involved the alteration of the canvas cover and frame above Shyanna's head; and that directly following these acts, the frame came loose and injured Shyanna. This case does not involve remote or speculative cause. The source of Shyanna's injury—a falling metal rod—is undisputed. There is no significant temporal distance between the removal of the canvas cover from the float vehicle and the loosening of the metal frame. All of the allegedly negligent acts in this case were observed by witnesses who will provide testimony at trial. Accordingly, the facts, if resolved in Plaintiffs' favor, are sufficient to support a finding of proximate causation. *See Carey v. Pure Distrib. Corp.*, 124 S.W.2d 847, 849–50 (Tex. 1939) (concluding evidence was sufficient to establish causation in negligence action where defendants placed six-gallon oil can on side of truck without properly securing can; the can came loose; and top of can struck plaintiff in the head when it fell off the truck).

Finally, the Court need not make a determination of Plaintiffs' assertion in their response that the doctrine of *res ipsa loquitor* applies to this case to resolve WWP's motion for summary judgment. To establish a claim by *res ipsa loquitur*, a plaintiff must prove (1) an accident of this character does not ordinarily occur in the absence of negligence, and (2) the instrument that caused the accident was under the exclusive management and control of the defendant. *Marathon Oil Co. v. Sterner*, 632 S.W.2d 571, 573 (Tex. 1982). Both factors must be present for

the factfinder to infer that the defendant was negligent. *See Bond v. Otis Elevator Co.*, 388 S.W.2d 681, 686 (Tex. 1965); *Sanders v. Naes Cent., Inc.*, 498 S.W.3d 256, 258 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Plaintiffs have not moved for summary judgment on their negligence claim based on *res ispa loquitor*, but may ask for a jury instruction to that effect at trial. The Court only finds today that there is sufficient evidence of proximate causation to survive summary judgment.

## IV.  Conclusion and Recommendation

Having considered Plaintiffs' motion for leave to amend, the responsive filings, the evidentiary record, and the governing case law, the undersigned **recommends** that Plaintiffs' Reurged Motion for Leave to File Third Amended Complaint with Evidence in Support [#57] be **DISMISSED WITHOUT PREJUDICE** to raising at trial on a full evidentiary record.

Having considered Defendant Wounded Warrior Project's motion for summary judgment, the response and reply thereto, the summary judgment record, and governing law, the undersigned **recommends** that Defendant Wounded Warrior Project, Inc.'s Motion for Summary Judgment [#73] be **DENIED**.

**IT IS ALSO ORDERED** that Plaintiffs' Motion for Leave to File Sur-Reply [#76] is **GRANTED**. The Clerk is directed to docket Plaintiffs' Sur-Reply [#76 at 4–8].

## V.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is

modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 10th day of September, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE