IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| FRANKIE D. ALBERT, AS PARENTS AND NEXT FRIEND OF JANE DOE, A MINOR; AND PHYLIS ALBERT, AS PARENTS AND NEXT FRIEND OF JANE DOE, A MINOR; | § § § § § § | SA-17-CV-00703-JKP |
| *Plaintiffs,* | § § | |
| vs. | § § | |
| UNITED STATES DEPARTMENT OF THE ARMY, WOUNDED WARRIOR PROJECT, INC., | § § § § | |
| *Defendants.* | § | |

# ORDER

Before the Court in the above-styled cause of action are Defendant Wounded Warrior Project, Inc.'s Motion to Exclude Expert Testimony of Dr. Robert Lowry [#83] and Defendant Wounded Warrior Project, Inc.'s Motion to Exclude Expert Testimony of Mr. William Quintanilla [#90], which were referred to the undersigned for disposition. The Court held a hearing on the motions on October 25, 2019, at which all parties appeared through counsel. Having considered the motions, the responses and replies thereto, the arguments of counsel at the hearing, and the governing law, the Court will grant in part Defendant's motions.

## I. Background

This case arises out of personal injuries sustained by Plaintiff Shyanna Albert in 2013 when she was 13 years old. According to the Second Amended Complaint before the Court, Shyanna was injured while riding in a U.S. Army vehicle during a Veteran's Day Parade sponsored by the Wounded Warrior Project, Inc. ("WWP") when a steel bar fell on her head and knocked her unconscious. (Second Am. Compl. [#54] at ¶¶ 5–7.) Shyanna's parents, Frankie

1

and Phylis, filed this action as parents and next friends of Shyanna, then a minor, against Defendants United States Department of the Army ("U.S. Army") and WWP, alleging that their negligence caused Shyanna's injuries. (*Id.* at ¶¶ 8–12.) Shyanna, upon reaching the age of majority, was added as an additional Plaintiff in this case. (Order [#51].) Plaintiffs' lawsuit seeks damages related to severe and permanent head injuries Shyanna allegedly sustained from the impact of the accident. (Second Am. Compl. [#54] at ¶ 14.) These damages include reasonable past and future medical care and expenses, as well as compensation for future lost earning capacity. (*Id.*)

Plaintiffs designated Dr. Robert C. Lowry, M.D. and Mr. William L. Quintanilla, M.Ed., L.P.C. as two of their expert witnesses in this case to testify on Plaintiff's future medical expenses and lost earning capacity, respectively. WWP now moves the Court to exclude these individuals from testifying as experts at trial. Although WWP originally challenged both the experts' qualifications and the reliability of their testimony, WWP withdrew its challenges regarding qualifications prior to the hearing. (Advisory [#97].) The Court addresses WWP's challenge to the reliability of the proposed testimony of each of these experts in turn.

## II. Legal Standard

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court held that trial judges must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. Subsequent to *Daubert*, Rule 702 of the Federal Rules of Evidence was amended to provide that a witness "qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *See Guy v. Crown Equipment Corp.*,

394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702). The Rule 702 and *Daubert* analysis applies to all proposed expert testimony, including nonscientific "technical analysis" and other "specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). The overarching focus of a *Daubert* inquiry is the "validity and thus evidentiary relevance and reliability of the principles that underlie a proposed submission." *Watkins*, 121 F.3d at 989 (quoting *Daubert*, 509 U.S. at 594–96). Because the *Daubert* test focuses on the underlying theory upon which the opinion is based, the proponent of expert testimony need not prove the expert's testimony is correct, but rather that the testimony is reliable. *Moore*, 151 F.3d at 276. This determination of reliability includes a preliminary determination of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93.

*Daubert* sets forth four specific factors that the trial court should ordinarily apply when considering the reliability of scientific evidence: (1) whether the technique can or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the relevant scientific community generally accepts the technique. *Id.* This test of reliability, however, is "flexible," and these factors "neither necessarily nor exclusively apply to all experts or in every case." *Kumho Tire Co.*, 526 U.S. at 141. "Rather, the law grants a district court the same broad latitude when it decides how

to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142. "The proponent need not prove that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore*, 151 F.3d at 276.

Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000). *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III. Dr. Lowry

Dr. Lowry is a physician specializing in diagnosing and treating concussions in practice at the Concussion Center in San Antonio, Texas, where he treated Shyanna for symptoms she alleges stemmed from the injury underlying this suit. Dr. Lowry intends to testify on Shyanna's head injury, its causes and long-term effects, and the future costs associated with her medical care. Dr. Lowry opines that Shyanna sustained permanent brain damage from her injury and that her concussion was particularly damaging because it was a second concussion occurring close in time to a first concussion sustained during a basketball game, meaning Shyanna suffers from "Second Impact Syndrome." (Case Summary [#83-2] at 3; Suppl. Report [#83-3] at 2.) Dr. Lowry believes Shyanna's confirmed non-epileptic seizure disorder and its associated psychological symptoms were caused by her brain injury and are not representative of a purely psychological "conversion disorder." (Suppl. Report [#83-5] at 1–4.) According to Dr. Lowry,

4

Shyanna's future medical care will include physical therapy, cognitive rehabilitation, occasional emergency treatment, counseling, and medications. (Suppl. Report [#83-3] at 2.) Dr. Lowry provides a "conservative estimate" of Shyanna's future medical expenses for her seizures, severe headaches, and other symptoms of $250,000. (*Id.*)

In its motion, WWP raises several issues regarding the reliability of Dr. Lowry's testimony, such as his failure to personally review Shyanna's school records. But during the hearing, WWP narrowed its challenge to Dr. Lowry's testimony that Shyanna's future medical expenses will be approximately $250,000. The Court sustains the objection: Plaintiffs have not carried their burden to establish the reliability of this aspect of Dr. Lowry's testimony and he is precluded from testifying about his estimate of Shyanna's future medical costs.

Dr. Lowry's estimate of future medical costs purports to be based on "current reasonable and necessary medical costs in Bexar County" and "Shyanna's history of treatments . . ., her current [sic] condition, the probable need for occasional emergency treatment, counselling, and medications. (Suppl. Report [#83-3] at 2.) Yet Dr. Lowry's opinions do not explain in sufficient detail how he calculated this estimate, what specific treatments he predicts being necessary, the costs of such treatments, or the length of Shyanna's predicted recovery period. He merely states that Shyanna's medical costs from January 2018 to May 2018 at the Concussion Center amounted to $24,907.84, that this constitutes about one-fourth of the anticipated treatment for Shyanna (not just by him, but by other medical providers), and that his "extensive experience and knowledge" give him the ability to predict her additional expenses at $250,000.

In response to WWP's reliability challenge and the filing of its motion to exclude, Dr. Lowry executed a declaration with some additional information to support his calculation.[1] (Lowry Decl. [#96] at 7.) The declaration does provide some explanation for his $250,000 estimate, in that Dr. Lowry opines that Shyanna will need permanent care and could live to 2070 or 2080 or beyond; that the cost of treatment would be $70,000.00 annually in the private medical field; and that Dr. Lowry believes her actual cost will be approximately $10,000 annually, which amounts to $250,000 over a period of 25 years. (*Id.* at 9–10.) Yet this testimony still fails to establish a sufficient foundation for Dr. Lowry's opinion on the cost of Shyanna's medical care by identifying all the various types of treatments Shyanna will likely receive in the future, their associated costs, and their frequency. Nor does it give adequate foundation for the source of Dr. Lowry's knowledge and estimates. Dr. Lowry treats concussion disorders but his testimony goes beyond his treatments and the costs associated with them. To the extent that he is relying on published or other sources regarding costs associated with other treatments he anticipates Shyanna may need, he does not identify them. Accordingly, Plaintiffs have not, so far, established by the preponderance of the evidence that Dr. Lowry's $250,000 estimate of future medical care is based upon sufficient facts or data so as to be sufficiently reliable under *Daubert* and Rule 702. *See Guy*, 394 F.3d at 325.

Dr. Lowry may testify, however, on all other opinions and conclusions contained in his various reports, including the extent of Shyanna's post-concussive disorder. Additionally, Dr. Lowry may testify to the types of future medical care Shyanna will require, and, if it is within his

---

[1] WWP objected to this supplemental declaration on the basis that it was executed after the deadline for designating experts. The Court overrules the objection. The declaration was submitted to the Court in lieu of Dr. Lowry appearing live to testify at the Court's *Daubert* hearing. There is nothing permissible in the Court's consideration of these additional statements by Dr. Lowry in ruling on WWP's motion.

knowledge and expertise, the costs of these various treatments and their predicted frequency. If Dr. Lowry is able lay a better foundation during trial and provide more detailed testimony on these matters, the Court may revisit this ruling and may permit Dr. Lowry to testify as to the estimated cost of all future medical care for Shyanna. Therefore, the Court's ruling limiting Dr. Lowry's testimony will be without prejudice to Plaintiffs approaching the bench during trial after they believe they have laid the proper foundation and asking the presiding judge to admit Dr. Lowry's testimony on his estimate of Shyanna's total future medical expenses.

### IV. Mr. Quintanilla

Mr. Quintanilla is a vocational rehabilitation counselor who interviewed Shyanna in conjunction with this litigation and intends to testify on her vocational limitations and lost earning capacity due to her head injury. Based on his review of the medical evidence in this case and his interview with Shyanna, Mr. Quintanilla opines that Shyanna would have been capable of achieving a Bachelor's Degree if not for her injury but instead can hope at best to obtain an Associate's Degree and may possibly not even obtain her high-school diploma. (Addendum Report [#90-3] at 3–4.) Mr. Quintanilla bases his opinions as to Shyanna's lost earning capacity on these conclusions. (*Id.*) WWP contends Mr. Quintanilla's testimony is unreliable because it is not based on reliable principles and methods, but rather unsupported assumptions not based on any scientific or specialized expertise. The Court agrees.

Plaintiffs have failed to demonstrate that Mr. Quintanilla's testimony is the product of a reliable methodology. Mr. Quintanilla did not perform any evaluative tests on Shyanna; he does not cite to any scholarly articles or journals; and he admits he had to "Google" several terms in reviewing Shyanna's case, such as post-concussive syndrome, traumatic brain injury, and mild traumatic brain injury. (Quintanilla Dep. [#90-1] at 66:1–25.) Mr. Quintanilla testified in his

7

deposition that his opinion was based solely on a review of Shyanna's school records and grades and her parents' academic achievements (Shyanna's father is in the process of obtaining a Bachelor's Degree, and her mother obtained an Associate's Degree). (*Id.* at 75:8–76:25.)

Yet Mr. Quintanilla could not identify how he reached this conclusion, other than citing generally to "stated research" that Shyanna had a "70% chance of completing a Bachelor Degree" due to the educational history of her parents. (Addendum Report [#90-3] at 3.) Mr. Quintanilla's opinion that Shyanna would have strived to obtain a Bachelor's Degree may be a reasonable assumption, but it is not one that is supported by any articulated methodology and therefore cannot be tested or reproduced. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 748 (3d Cir. 2000) (concluding that vocational rehabilitation expert's testimony was "subjective and unreproducible" under *Daubert* and therefore unreliable because the expert could not identify his methodology). In order to be admissible, an expert's testimony must assist the trier of fact because the expert has some knowledge and expertise beyond lay knowledge and commonsense inferences and assumptions. *See Daubert*, 509 U.S. at 589–90 (emphasizing that the touchstone of admissibility of expert testimony is whether the expert's "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue") (citing Fed. R. Evid. 702).

Because Mr. Quintanilla could not describe his methodology, the Court is unable to evaluate whether the methodology was reliably applied in this case. In fact, Mr. Quintanilla's testimony appears to be an *ipse dixit*: he will tell the fact finder that his opinions are true because he says they are. *Daubert* requires more than a black box. Accordingly, the Court will prohibit Mr. Quintanilla from testifying that Shyanna was not able to pursue a Bachelor's Degree due to her head injury. Nothing in this order prevents Mr. Quintanilla from testifying on the average

earnings of individuals with a high school diploma versus an Associate's Degree or a Bachelor's Degree or any other opinion contained in his expert report.

**IT IS THEREFORE ORDERED** that Defendant Wounded Warrior Project, Inc.'s Motion to Exclude Expert Testimony of Dr. Robert Lowry [#83] and Defendant Wounded Warrior Project, Inc.'s Motion to Exclude Expert Testimony of Mr. William Quintanilla [#90] are both **GRANTED IN PART** as follows:

- Dr. Lowry may not testify at trial that Shyanna's future medical expenses will be $250,000.

- Mr. Quintanilla may not testify at trial that Shyanna would have obtained a Bachelor's Degree but for her injury.

**IT IS FURTHER ORDERED** that the Court's ruling as to Dr. Lowry is **without prejudice** to Plaintiff moving to reconsider the ruling if Dr. Lowry's testimony at trial lays a sufficient foundation to enable him to testify as to his estimate Shyanna's future medical expenses.

**IT IS FINALLY ORDERED** that in all other respects, the Motions [#83, #90] are **DENIED**.

SIGNED this 5th day of November, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE