UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FRANKIE D. ALBERT and
PHYLIS ALBERT, as Parents
and Next Friends of
SHYANNA D. ALBERT,

        Plaintiffs,

v.                                             No. 5:17-CV-0703-JKP

UNITED STATES DEPARTMENT OF
THE ARMY, WOUNDED WARRIOR
PROJECT, INC.,

        Defendants.

## ORDER

Before the Court is *Defendant United States Department of the Army's Motion to Dismiss for Lack of Jurisdiction* pursuant to Fed. R. Civ. P. 12(b)(1) (ECF No. 106). Plaintiffs filed a response (ECF No. 107), Defendants filed a reply (ECF No. 108), and the oral arguments of the parties were heard on August 6, 2020. After due consideration, the Court denies the motion.

## BACKGROUND

Plaintiffs bring claims under the Federal Tort Claims Act ("FTCA") for injuries sustained by Shyanna Albert ("Shyanna") on November 9, 2013, while riding in a U.S. Army Light Medium Tactical Vehicle ("LMTV"). The Wounded Warrior Project, Inc. ("WWP") requested the use of the vehicle for its float in the San Antonio Veterans Day Parade. Shyanna was injured when a steel bar fell on her head and knocked her unconscious. Second Am. Compl. ECF No. 54, pars. 5–7. Shyanna's parents, Frankie and Phylis, filed this action as parents and next friends of Shyanna, then a minor, against Defendants United States Department of the Army (the "Army") and WWP, alleging that their negligence caused Shyanna's injuries. *Id.* pars. 8–12. The Army

moves to dismiss this case for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## LEGAL STANDARD

Federal district courts are courts of limited jurisdiction, and they may only exercise such jurisdiction as is expressly conferred by federal statute. *See Le Mieux Bros. v. Tremont Lumber Co.*, 140 F.2d 387, 389 (5th Cir. 1944). Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which subject matter jurisdiction may be challenged. Thus, the burden of establishing subject matter jurisdiction by a preponderance of the evidence rests with the party seeking to invoke it. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008) (citations omitted).

In evaluating a challenge to subject matter jurisdiction, the Court is free to weigh the evidence and resolve factual disputes so that it may be satisfied that jurisdiction is proper. *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). "A district court may dispose of a motion to dismiss for lack of subject matter jurisdiction based 'on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (quoting *Robinson v. TCI/US West Communs.*, 117 F.3d 900, 904 (5th Cir. 1997)). Dismissal of the action is warranted if the plaintiff's allegations, together with any undisputed facts, do not establish the Court has subject matter jurisdiction. *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992).

Courts must not resolve disputed facts dispositive of both subject matter jurisdiction and the merits of an FTCA claim on a 12(b)(1) motion. *Montez*, 392 F.3d at 151. "When the issue of jurisdiction is intertwined with the merits, district courts should 'deal with the objection as a

direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56.'" *M.D.C.G. v. United States*, 956 F.3d 762, 768-69 (5th Cir. 2020) (quoting *Montez*, 392 F.3d at 150 in turn quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)). "[I]n resolving whether a government employee was acting within the scope of his employment under the FTCA, . . . a 12(b)(6) or summary judgment standard, not the Rule 12(b)(1) standard, should be applied. *Id.* The summary judgment standard permits the parties to satisfy their respective burdens by "tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992); *accord* Fed. R. Civ. P. 56(c). When applying the summary judgment standard, the Court must view all facts and inferences in the light most favorable to the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

## DISCUSSION

"Except when waived, the United States has sovereign immunity from suit." *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The FTCA waives sovereign immunity when an injury is

> caused by the negligent or wrongful act or omission of *any employee of the Government while acting within the scope of his office or employment*, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added). *See also Hebert v. United States*, 438 F.3d 483, 486 (5th Cir. 2006) (citing 28 U.S.C. §§ 1346, 2674).

Under the FTCA, "'employee of the government' includes . . . members of the military or naval forces of the United States." 28 U.S.C. § 2671. For military personnel, the FTCA defines "acting within the scope of his office or employment" as "acting in the line of duty." 28 U.S.C.

3

§§ 1346(b), 2671. Whether military personnel are acting within the line of duty is determined by state law of respondeat superior. *Williams v. United States*, 350 U.S. 857 (1955) (per curiam). Under Texas law of respondeat superior, "an employee's conduct is considered to fall within the scope of his employment if his actions were '(1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed.'" *Counts v. Guevara*, 328 F.3d 212, 214 (5th Cir. 2003) (citations omitted).

The party responding to a 12(b)(1) motion bears the burden of proof that subject matter jurisdiction exists. *Barrois*, 533 F.3d at 327. Thus, Plaintiffs must demonstrate that Lt. Arredondo[1] and the two enlisted reservists were federal employees acting within the course and scope of their employment at the time Shyanna sustained injury. The parties do not dispute that the two enlisted reservists were federal employees at the time Shyanna sustained injury. The Army argues Plaintiffs have not carried their burden because they failed to establish that (1) Lt. Arredondo was a federal government employee on the date in question and (2) that Lt. Arredondo's order to provide government equipment as a favor to her husband falls within the course and scope of her employment with the United States Army Reserve.[2]

The parties do not dispute the facts regarding the acquisition of the LMTV and its transport to the parade. There are disputed facts regarding whether WWP employees or Army reservists committed the alleged acts or omissions which caused Shyanna's injuries. *See* ECF

---

[1] The Army states that Captain Jessica Arredondo, "363d Quartermaster Battalion, 4th Sustainment Command (Expeditionary), U.S. Army Reserve, was the Company Commander for the Headquarters Company at the time in question." ECF No. 106 at 2 n.1. "At the time of these events, she was either a First Lieutenant or a Second Lieutenant with the Army Reserve (she cannot remember which)." *Id.* Accordingly, in this Order, the Court refers to Cpt. Arredondo as "Lt. Arredondo."

[2] While the Army does not dispute the underlying facts with respect to the enlisted reservists—they were paid to drive the LMTV in the parade; they were federal employees; they were in uniform—it contends Lt. Arredondo's improper order tainted the soldiers' actions, changing the nature of their conduct from that which would ordinarily be valid to conduct outside of the course and scope of their employment.

No. 80 at 10-17. While the resolution of these merit-based disputed facts could impact the Court's jurisdictional analysis, the Court, applying the summary judgment standard, is able to resolve the jurisdictional issue while leaving the ultimate question of negligence to the trier of fact.

### A. Employee of the Federal Government

With respect to its first argument, the Army contends that Lt. Arredondo was not employed by the federal government on the day Shyanna was injured because Lt. Arredondo was not paid, was not subject to military discipline, was not on active duty, and the Army "had no authority to direct her actions on the date in question unless they placed her on orders." ECF No. 106 at 7.

### 1. Paid Status

It is undisputed that Jessica Arredondo was a Lieutenant and Company Commander in the United States Army Reserve at the times relevant to this case. The language of the FTCA includes "members of the military" without reference to whether the member was paid. 28 U.S.C. § 2671. In support of its argument, the Army references the Texas Tort Claims Act definition of government employee as one "who is in the paid service of a governmental unit." ECF No. 106 at 7 (citing Tex. Civ. Prac. & Rem. Code § 101.001(2)). The Texas Tort Claims Act is inapplicable to FTCA employment status analysis. The Court applies Texas law of respondeat superior to determine whether a federal government employee's conduct falls within the scope of his or her employment. It looks to the FTCA to determine whether an individual was in the employ of or service to the United States at the time of the alleged tort. *See Williams v. United States*, 71 F.3d 502, 505 (5th Cir. 1995).

The Army cites no case in support of its proposition that for the purpose of FTCA claims, a reservist is not employed by the federal government on his or her unpaid days. While the court is not aware of a case specifically on point, this Court is not the first to hear the argument that a reservist was not an employee of the government at the time of an alleged tort for the purpose of invoking jurisdiction against the United States under the FTCA. In *Duffy v. United States*, the court found that reservists fall within the "broad definition" of employee under the FTCA because "the FTCA's definition of employee for purposes of the Act does not require that a person possess formal employee status." No. 87 C 10826, 1990 U.S. Dist. LEXIS 4033, at *6, 1990 WL 51264, at *2 (N.D. Ill. Apr. 11, 1990) (citing *Logue v. United States*, 412 U.S. 521, 526-28 (1973); *Witt v. United States*, 462 F.2d 1261, 1263-64 (2d Cir. 1972); *Guccione v. United States*, 670 F. Supp. 527, 531 (S.D.N.Y. 1987), *aff'd* 847 F.2d 1031 (2d Cir. 1988)). In *Combs v. United States*, the court found, *inter alia*, that the reservist-defendant "was clearly an employee of the government, regardless of his duty status at the time of the accident." No. 86-42, 768 F. Supp. 584, 589 (E.D. Ky. June 4, 1991) (the court also noted that whether a defendant was acting within the scope of employment is a separate issue decided in accordance with state law of respondeat superior).

**2. Military Discipline**

Lt. Arredondo testified in deposition that she was counseled for failing to report Shyanna's injury, demonstrating that she was subject to military discipline. *See* Arredondo Dep. ECF No. 106-1 at 23 (22:22-24:3).

**3. Active Duty**

The Army's active duty argument relies on *Brooks v. United States*, 337 U.S. 49 (1949), *Feres v. United States*, 340 U.S. 135 (1950), and *United States v. Brown*, 348 U.S. 110 (1954).

These cases were brought by servicemen who contended they had been injured in the line of duty. Here, members of the military are alleged to have caused the injury. Consequently, *Brooks*, *Feres*, and *Brown* are inapplicable in this case.

### 4. Authority to Direct Actions

The Army cites no case law to support its assertion nor does it explain what bearing the Army's authority to direct Lt. Arredondo's actions at the times relevant to this case has on her employment status. The Court notes that "meaningful control" analysis is generally applied where a court is tasked with deciding whether an individual is a government employee or an independent contractor. *See Rodriguez v. Sarabyn*, 129 F.3d 760, 765 (5th Cir. 1997).

The Court is not persuaded by the Army's arguments and finds that as a company commander for the U.S. Army Reserve, Lt. Arredondo was a federal government employee at the times relevant to this case.

### B. Acting within the Course and Scope of Employment

The Army's argument that Lt. Arredondo was acting outside the course and scope of her employment with the United States Army Reserve when she provided the LMTV and soldiers to drive it is tethered to a single line of testimony from Lt. Arredondo's deposition, to wit: "It was a favor for my then husband." ECF No. 106-1 at 16 (15:13-20). The Army contends this deposition testimony is evidence that "this special duty was the fruit of the poisonous tree: Mrs. Arredondo's orders to participate in this parade were issued for an improper purpose.[3] Therefore,

---

[3] The Army cites Lt. Arredondo's deposition at 22:3–7 in support of this contention. At 22:3-7, Arredondo testified: "Q. Were the soldiers paid for coming down on November of 2013? A. Yes. Q. And were you? A. No." ECF No. 106-1 at 23 (22:3-7).

because of the improper purpose, the whole enterprise[4] is outside the course and scope." ECF No. 113 at 2.

The Army further contends that Lt. Arredondo's obtaining the LMTV and assigning soldiers to drive it as a favor to her husband is a fact that has been "confirmed repeatedly over the entire (lengthy) course of discovery and deposition and [is] not in dispute." ECF No. 113 at 4. However, in support of this contention, the Army points only to the deposition testimony of Lt. Arredondo and Sgt. Orozco. Lt. Arredondo references a "favor" twice in her deposition testimony. First, on page fifteen, she answers the question, "So now do you know how it came about that the LMTV wound up at the Veterans Day Parade in San Antonio in November of 2013?" by stating, ""It was a favor for my then husband." ECF No. 106-1 at 16 (15:13-20). Second, when asked if there was documentation for "taking the truck and the soldiers to San Antonio," she responded, "It was a favor. So it was not formal." *Id.* at 17 (16:21). To the question, "It was a personal favor?" Sgt. Orozco testified, "Yes." *Id.* at 14 (55:4-5). Sgt. Orozco further testified he thought "Lieutenant Arredondo and Juan [her husband] were doing each other a favor." *Id.* at 18 (69:17-18). And, "Like I said, it was a favor done for one or the other, I don't know. We were just tasked out to help them [WWP] out." *Id.* (72:16-18). Notably, no foundation was established to support Sgt. Orozco's knowledge that a favor being done. Consequently, the Court is not convinced that the "fact" (that the LMTV and soldiers to drive it were provided solely as a favor) has been "confirmed repeatedly."

At oral argument, the Army argued that Lt. Arredondo's failure to consider the factors in Regulation 5500.07 is proof of an impermissible "why." In other words, in the Army, why a commander gives an order matters. And because the "why" in this case was as a favor to her then

---

[4] *See* n.2, *supra*.

husband, Lt. Arredondo gave an improper order. The Army does not point to evidence that supports this conclusion. For example, no one posing deposition questions asked Lt. Arredondo if she considered the factors in Regulation 5500.07. Moreover, use of the LMTV in the Veterans Day parade, and the services of the reservists necessary to make proper use of the LMTV, was not inconsistent with Regulation 5500.07.

Regulation 5500.07 allows the head of a DoD Component command or organization to provide the use of DoD equipment, and the services of DoD employees necessary to make proper use of the equipment, as logistical support of an event sponsored by a non-Federal entity, when the head of the DoD command or organization determines all of the following:

> (1) The support does not interfere with the performance of official duties and would in no way detract from readiness;
>
> (2) DoD community relations with the immediate community and/or other legitimate DoD public affairs or military training interests are served by the support;
>
> (3) It is appropriate to associate DoD, including the concerned Military Department, with the event;
>
> (4) The event is of interest and benefit to the local civilian community, the DoD Component command or organization providing the support, or any other part of DoD;
>
> (5) The DoD Component command or organization is able and willing to provide the same support to comparable events that meet the criteria of this subsection and are sponsored by other similar non-Federal entities;
>
> (6) The use is not restricted by other statutes (see 10 U.S.C. 2012 (Reference (f)) which limits support that is not based on customary community relations or public affairs activities) or regulations; and
>
> (7) No admission fee (beyond what will cover the reasonable costs of sponsoring the event) is charged for the event, no admission fee (beyond what will cover the reasonable costs of sponsoring the event) is charged for the portion of the event supported by DoD, or DoD support to the event is incidental to the entire event in accordance with public affairs guidance.

DoD Directive 5500.07-R section 3-211 (2011).[5] The Army did not present any evidence that the special duty in this case conflicted with any of the factors listed in section 3-211. Nor does it appear that this special duty did so conflict. There is no evidence the special duty detracted from readiness; it seems appropriate for the Army Reserve to be associated with a Veterans Day parade and the Wounded Warriors Project; a Veterans Day parade is of interest and benefit to the local civilian community; there does not appear to be any reason Lt. Arredondo's command would be unable or unwilling to provide the same support to comparable events (*see* Sgt. Orozco testimony ECF No. 106-3 at 3 (10:17-11:5)); the Army did not point to any statute that restricted the activity; and there is no evidence there was any admission fee to attend this Veterans Day parade.

In the absence of evidence to the contrary, the Court presumes that doing a favor for one's husband and being in compliance with DoD Directive 5500.07-R § 3-211 may occur simultaneously. Moreover, as Plaintiffs point out, under Texas law, mixed or ulterior motives do not preclude a conclusion that a government employee was acting within the course and scope of his or her employment. *See, e.g., Laverie v. Wetherbe,* 517 S.W.3d 748, 753 (Tex. 2017); *City of Houston v. Lal*, No. 01-19-00625-CV, 2020 WL 937026, at *3 (Tex. App. – Houston [1st Dist.] Feb. 27, 2020, no pet.).

In support of their burden to show that Lt. Arredondo was acting within the course and scope of her employment, Plaintiffs proffer the deposition testimony of Lt. Col. Garces and Sgt. Orozco. Lt. Col. Garces testified that as the company commander, it was within Lt. Arredondo's authority to procure an LMTV and assign soldiers under her command to drive the LMTV in the Veterans Day parade. *See* Lt. Col. Juan Garces Dep. ECF No. 107 at 67-69; 74; 75 (17:19-24) (stating, *inter alia*, "She's a commander. She's in charge of the equipment and her soldiers."). In

---

[5] https://tigs-online.ignet.army.mil/Guides_Ref/d55007p.pdf (last visited Aug. 8, 2020).

*Duffy v. United States*, United States Air Force Brigadier General John J. Closner, presented similar testimony via affidavit:

> Closner stated that: (1) reservists perform military missions although they are not on active duty; (2) reservists who otherwise have full-time civilian careers must have the flexibility to make decisions and take actions pursuant to their reserve duties without the necessity of being placed on active duty status each time; (3) commanders and others in reserve units are expected to continue to support and serve their units regardless of their duty status; (4) actions taken by, advice given by, management of, and personnel assigned to reserve units are totally within the scope of a reservist's employment.

966 F.2d 307, 314 (7th Cir. 1992). Sgt. Orozco testified that he had previously done this type of special duty—participated in a parade, occasion, or ceremony—by assignment or by having volunteered. Sgt. Orozco Dep. ECF No. 106-3 at 3 (10:17-11:5).

Plaintiffs contend that providing personnel or equipment for a Veterans Day parade is a routine part of the Army's recruitment and outreach activities. Plaintiffs further argue that the relationship between Lt. Arredondo and the WWP representative (her husband) is of no consequence because the activity was within her realm of authority. Therefore, Plaintiffs argue, Lt. Arredondo's "favor"—use of an LMTV driven by uniformed reservists in a Veterans Day parade—was not such a complete departure from her work as company commander that she was no longer acting within the scope of her employment.

The Court finds that the evidence proffered by the parties demonstrates that Lt. Arredondo was operating within her authority when she requested use of an LMTV and assigned soldiers under her command to drive the vehicle in the November 9, 2013, San Antonio Veterans Day parade. Consequently, the enlisted reservists special duty assignment was not tainted by an improper order.

**CONCLUSION**

For the reasons stated above, the Court concludes Lt. Arredondo and the enlisted reservists were federal government employees acting within the course and scope of their employment when Shyanna was injured. Accordingly, *Defendant United States Department of the Army's Motion to Dismiss for Lack of Jurisdiction* (ECF No. 106) is DENIED.

It is so ORDERED this 10th day of August 2020.

*[signature]*

JASON PULLIAM
UNITED STATES DISTRICT JUDGE